BILL LOCKYER Attorney General MARJORIE E. COX Deputy Attorney General
THE HONORABLE STEVE COOLEY, DISTRICT ATTORNEY, COUNTY OF LOS ANGELES, has requested an opinion on the following question:
May public funds of a general law city or charter city be expended to reimburse city officials for their expenses in purchasing meals for third parties, such as constituents, legislators and private business owners, at meetings held to discuss legislation or other matters of benefit to the city?
 CONCLUSION
Public funds of a general law city may not be expended to reimburse city officials for their expenses in purchasing meals for third parties, such as constituents, legislators and private business owners, at meetings held to discuss legislation or other matters of benefit to the city. If the charter so authorizes, public funds of a charter city may be expended for such purposes.
 ANALYSIS
Recently, the Public Integrity Division of the Los Angeles County District Attorney's Office has received several inquiries from members of the public concerning whether the funds of a general law city or a charter city may be used to reimburse city officials for their expenses in purchasing meals for others, such as legislators, constituents and representatives of private businesses, during a lunch or dinner meeting where legislation or other matters of importance to the city are discussed. We conclude that the funds of a charter city, but not a general law city, may be expended for such purposes.
 1. General Law Cities
Article XI, section 2, subdivision (a), of the Constitution directs the Legislature to provide for "city powers." The Legislature has complied with this mandate by enacting various statutes, two of which merit attention in the present context. The first is Government Code section36514.5[1], which provides for the reimbursement of expenses incurred by city council members:
 "City councilmen may be reimbursed for actual and necessary expenses incurred in the performance of official duties."
The second is section 50023, which states the rule regarding the reimbursement of expenses incurred in attending meetings with legislators:
 "The legislative body of a local agency, directly or through a representative, may attend the Legislature and Congress, and any committees thereof, and present information to aid the passage of legislation which the legislative body deems beneficial to the local agency or to prevent the passage of legislation which the legislative body deems detrimental to the local agency. . . . The cost and expense incident thereto are proper charges against the local agency."[2]
In analyzing these two statutes, we note that laws allowing the payment of "fees, expenses, and compensation of public officers" are to be "strictly construed." (Madden v. Riley (1942) 53 Cal.App.2d 814, 822; accord, County of San Diego v. Milotz (1956) 46 Cal.2d 761, 767; 66 Ops.Cal.Atty.Gen. 186, 187 (1983); 65 Ops. Cal.Atty.Gen. 517, 520-521 (1982).) The purpose of this rule of statutory construction is to protect public funds from unnecessary or excessive claims. (Citizen Advocates, Inc. v. Board of Supervisors (1983) 146 Cal.App.3d 171, 177; 61 Ops.Cal.Atty.Gen. 303, 305 (1978); 60 Ops.Cal.Atty.Gen. 16, 21 (1977).) Accordingly, "where ambiguity arises and [an] enactment admits of two interpretations," the statutory interpretation most "in favor of the government" must be adopted. (County of Marin v. Messner (1941)44 Cal.App.2d 577, 585; see County of San Diego v. Milotz, supra, 46 Cal.2d at p. 767.)
Turning first to the grant of authority contained in section 36514.5, we find that only claims for a city council member's "actual and necessary expenses" are to be reimbursed. (65 Ops.Cal.Atty.Gen., supra, at pp. 521-523.) This restriction avoids any possible application of the prohibition contained in article XVI, section 6, of the Constitution which states: "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever. . . ." (See Albright v. City of South San Francisco (1975) 44 Cal.App.3d 866,869-870; 61 Ops.Cal.Atty.Gen. 342, 344 (1978).)
In 61 Ops.Cal.Atty.Gen. 303, supra, we addressed a question similar to that presented here. Under Education Code section 44032, "the actual and necessary expenses" of a school district employee were examined. We concluded that the statutory phrase "actual and necessary expenses" did not include meals purchased for community leaders even though the purchase "is deemed to be for the benefit of and in the best interest of a school district." (Id. at p. 305; see also Citizen Advocates, Inc. v. Board of Supervisors, supra, 146 Cal.App.3d at pp. 178-179; California Teachers Assn. v. Board of Trustees (1977)70 Cal.App.3d 431, 435; Madden v. Riley, supra, 53 Cal.App.2d. at pp. 822-824; cf. Metropolitan Water Dist. v. Adams (1944) 23 Cal.2d 770,773; 75 Ops.Cal.Atty.Gen. 20, 22 (1992); 65 Ops.Cal.Atty.Gen., supra, at pp. 521-523; 61 Ops.Cal.Atty.Gen. 478, 480 (1978).) We reaffirm our 1978 opinion as to the meaning of the statutory phrase "actual and necessary expenses."[3]
Turning next to section 50023 with respect to expenses incurred by city officials when seeking the passage or defeat of state or federal legislation, we have interpreted the phrase "cost and expense incident thereto" as excluding the purchase of meals for others. In 66 Ops.Cal.Atty.Gen. 186, supra, we explained:
 "The last sentence of section 50023 makes the `cost and expense incident thereto' a proper charge against the county. . . . [W]e believe the context of section 50023 impliedly restricts the costs and expenses which are chargeable to the county to those incurred by the county's representatives and the costs and expenses of others who may attend the same meeting are not chargeable to the county under that section.
"Webster defines `incident' as something that happens as a result of or in connection with something more important. The more important something here is the meeting which the county representatives attend to present information. If meals are served at this meeting then the county representatives' costs of their meals result from and are connected with that meeting and are therefore incident thereto and chargeable to the county under section 50023. However, the cost of meals of others attending the same meeting, though incident to the meeting and perhaps chargeable to their employers, are not chargeable to the county under section 50023." (Id. at pp. 188-189.)
We reaffirm our 1983 opinion as to the meaning of the phrase "cost and expense incident thereto" contained in section 50023.
No other statute requires our examination concerning the use of funds by a general law city to reimburse city officials for the purchase of meals for third parties, such as constituents, legislators and business owners, at meetings held to discuss legislation or other matters of benefit to the city.[4] Statutory authority for such reimbursement does not exist.
 2. Charter Cities
Section 5 of article XI of the Constitution provides:
 "(a) It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith.
 "(b) It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: . . . (4) plenary authority is hereby granted, subject only to the restrictions of this article, to provide therein or by amendment thereto, . . . the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation, and for the number of deputies, clerks and other employees that each shall have, and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees."
In contrast to general law cities, charter cities may have provisions in their charters that supersede state statutes "with respect to municipal affairs" involving "areas which are of intramural concern only." (California Fed. Savings Loan Assn. v. City of Los Angeles (1991)54 Cal.3d 1, 17; accord, Johnson v. Bradley (1992) 4 Cal.4th 389, 399.)
We have previously concluded that the reimbursement provisions contained in section 36514.5 may be superseded by the charter provisions of a charter city. In 65 Ops.Cal.Atty.Gen. 517, supra, we observed:
 ". . . [A] city may derive some of its powers from a city charter. Article XI, section 5 . . . provides that a city charter may provide for the regulation of municipal affairs and the regulation of municipal affairs pursuant to such charter shall supersede all laws inconsistent therewith.
 ". . . We believe that reimbursement of city officers and employees for expenses incurred in performing city duties is a municipal affair within the meaning of article XI, section 5. [Citation.] Thus a city charter may provide for the reimbursement of expenses of members of a city council in a manner different from that provided in section 36514.5. In such case the provisions authorized by the charter would supersede those in section 36514.5." (Id. at p. 524; see 57 Ops.Cal.Atty.Gen. 11, 12-14 (1974).)
Hence, the electorate of a charter city through the adoption of a charter or its amendment has the constitutional authority to determine which, if any, expenses incurred by city officials will be reimbursed. The charter and any implementing ordinances would govern the right to reimbursement in the circumstances presented. (See Porter v. City of Riverside (1968)261 Cal.App.2d 832, 834-839; 28 Ops.Cal.Atty.Gen., supra, at p. 327.)
We conclude that public funds of a general law city may not be expended to reimburse city officials for their expenses in purchasing meals for third parties, such as constituents, legislators and private business owners, at meetings held to discuss legislation or other matters of benefit to the city. If the charter so authorizes, public funds of a charter city may be expended for such purposes.
[1] All further statutory references are to the Government Code unless otherwise indicated.
[2] The "legislative body of a local agency" includes the city council of a general law city. (§§ 5001, 5002.)
[3] "It must be presumed that the [Attorney General's] interpretation [of a statute] has come to the attention of the Legislature, and if it were contrary to the legislative intent that some corrective measure would have been adopted. . . ." (Meyer v. Board of Trustees (1961)195 Cal.App.2d 420, 432; see California Assn. of Psychology Providers v. Rank (1990) 51 Cal.3d 1, 17; Southern Pacific Pipe Lines, Inc. v. State Bd. of Equalization (1993) 14 Cal.App.4th 42, 54.)
[4] In 14 Ops.Cal.Atty.Gen. 6 (1949), we concluded that under the terms of section 26104, county funds to make "known the resources of the county" could be used to host a luncheon for a business convention group interested in the agricultural products of the county. It was assumed that "exhibits and speeches and a sight-seeing tour" would be provided as part of the advertising campaign. (Id. at p. 8; see also 28 Ops.Cal.Atty.Gen. 326, 333 (1956).) We believe that each relevant statute must be examined in light of its terms, purposes and the particular circumstances involved. Here, we find only sections 36514.5 and50023 relevant to the question presented.