[No. B176464. Second Dist., Div. Five. June 9, 2005.]

GARY CRAMER et al., Plaintiffs and Appellants, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Defendants
and Respondents.

## COUNSEL

Lewis, Marenstein, Wicke & Sherwin, Thomas J. Wicke; Law Office of David J. Duchrow and David J. Duchrow for Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, Paul W. Cane, Jr., Elizabeth A. Falcone; Jones Day, Elwood Lui, Scott D. Bertzyk and Kirstin Poirier-Whitley for Defendants and Respondents.

**O**PINION

**ARMSTRONG, J.**—Los Angeles County court reporters filed this suit against their employers,[1] respondents Los Angeles County Superior Court and County of Los Angeles, seeking to have the sums they earn for preparation of transcripts in cases considered for purposes of calculating their retirement benefits. On respondents' demurrers, the trial court found that those sums may not be included, citing Government Code[2] sections 31460, 31462, and 31554 and *McNeil v. Board of Retirement* (1958) 51 Cal.2d 278 [332 P.2d 281], and dismissed the case against respondents. We agree, and affirm.

The Complaint[3]

Appellants are the Los Angeles County Court Reporters Association; three individual court reporters, Gary Cramer, Mary Davis, and Susan de Beauvior; and Local 660, SEIU, AFL-CIO. The Los Angeles County Court Reporters Association and Local 660 jointly represent the official court reporters and court reporters pro tempore employed by the superior court. Court reporters are members of the Los Angeles County Retirement Association (Retirement Association), which was a defendant in this case but is not a party to this appeal.

The complaint alleges that court reporters employed by the superior court must work 40-hour weeks, and are compensated for eight-hour work days with W-2 wages. The compensation is, to use the parties' term, "pensionable," which we take to mean that the compensation counts in the calculation of retirement benefits. The complaint then alleges that in most felony cases, no transcript is prepared unless the court or a party requests one or an appeal is filed. If a transcript is prepared, reporters are paid by the county according to the fees set by statute. (Code Civ. Proc., § 269, subds. (b) & (c); §§ 69950, 69952.) Reporters are paid those fees as independent contractors, and the fees are reported as 1099 income. Respondents do not consider this income pensionable, and it is that fact which the complaint addresses.

---

[1] The parties agree that prior to February 2002, court reporters were county employees, and since that time they have been employees of the superior court.

[2] All further statutory references are to that code unless otherwise indicated.

[3] The allegations of the complaint are taken as true for purposes of demurrer.

The complaint also includes numerous factual allegations concerning the degree of control the superior court exercises over court reporters, including an allegation about the preparation of transcripts, which is that transcripts must comply with a manual issued by the superior court, and allegations about the many statutes which require or permit reporting of the record in various proceedings.

The complaint seeks an order commanding respondents to include transcript income as compensation under section 31460 and as compensable income under section 31461, statutes which (along with other statutes) govern their retirement pay.

## The Law

■ Under the County Employees' Retirement Law of 1937 (§ 31450 et seq.), employee retirement benefits are based on the employee's "final compensation." (*Salus v. San Diego County Employees Retirement Assn.* (2004) 117 Cal.App.4th 734, 736 [12 Cal.Rptr.3d 86].) Three statutes govern the calculation of "final compensation." Under section 31460, " 'Compensation' means the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member."

Section 31461 provides that " 'Compensation earnable' by a member means the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay . . . ."

Section 31462 provides that " 'Final compensation' means the average annual compensation earnable by a member during any three years elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the three years immediately preceding his retirement."

■ "[T]here is a logical progression in the statutory framework under which a pension is calculated. Application of section 31460 is the first step, since an item must meet its broad definition of 'compensation' if it is also to fall within the narrower category of 'compensation earnable' defined in

section 31461 and thus form the basis for the calculation of 'final compensation' on which the pension is based pursuant to section 31462 or 31462.1." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 493–494 [66 Cal.Rptr.2d 304, 940 P.2d 891].)

For court reporters, an additional statute applies. Section 31554 provides that "All officers and attaches of the superior court established within the county, except judges and participants in any other pension system, become members of the association on the first day of the calendar month after the board of supervisors adopts by four-fifths vote a resolution providing for their inclusion . . . . [¶] In this section 'officer or attache of the superior court' includes all commissioners, phonographic reporters who are paid salaries or per diems by the county and whose contributions are based upon such salaries or per diems, secretaries, stenographers, investigators, messengers, or other employees of the court."

These statutes have been interpreted, relative to court reporters, transcripts, and pensionable income. In fact, the precise question before us has been considered and decided by the Attorney General, in a 1954 opinion, and by our Supreme Court.

In 1954, the Attorney General was asked whether court reporters' transcript fees should be included in "compensation earnable" under section 31461. (24 Ops.Cal.Atty.Gen. 83 (1954).) The Attorney General concluded that "only salaries and/or per diems which the reporters receive in their capacity as the official reporters . . . are to be treated as earnable compensation for the purpose of contributions to the County Retirement System." (*Id.* at p. 87.)

The Attorney General reasoned that "The section which authorizes admission of superior court reporters to membership refers to 'reporters who are paid salaries or per diems by the county and whose contributions are based upon such salaries or per diems . . . .' (§ 31554). If the purpose of the section is merely to declare as eligible for membership those reporters who are paid salaries or per diems, there would be no point in adding the further qualification 'and whose contributions are based upon such salaries or per diems' unless it was intended to recognize that their contributions as members would be based only upon salary or per diem." (24 Ops.Cal.Atty.Gen., *supra*, at p. 87.)

In *McNeil v. Board of Retirement, supra,* 51 Cal.2d 278, the Supreme Court considered the same question.[4] *McNeil* interprets section 31554 in the same manner as did the Attorney General, to mean that transcript income is not part of the retirement calculation. The Supreme Court explained: "Prior to 1945 phonographic reporters of the superior court were specifically excluded from the retirement association. (Stats. 1939, ch. 973, [§ 4,] p. 2726.) In 1945 the definition of 'officer or attache of the superior court' was amended to include 'phonographic reporters who are paid salaries or per diems by the county and whose contributions *shall be based* upon such salaries or per diems, . . .' (Stats. 1945, ch. 1230, [§ 1,] p. 2340.) (Italics added.) This mandatory language clearly expressed a legislative purpose to restrict the basis of contributions to salaries or per diems. In 1947 the County Employees Retirement Law of 1937 was codified as sections 31450 to 31822 of the Government Code and the words 'shall be' were changed to 'are.' (Stats, 1947, ch. 424, p. 1269.) This change in the course of codification did not change the meaning. (See *Sobey* v. *Molony* [(1940)] 40 Cal.App.2d 381, 385 [104 P.2d 868]; Gov. Code, §§ 2, 9.) It is apparent from the plain words of section 31554 that it restricts membership in the retirement association not only to reporters who are paid salaries or per diems by the county but to reporters 'whose contributions are based upon such salaries or per diems.' If membership was not to be so restricted the Legislature would have omitted this phrase. (See *County of San Diego* v. *Milotz* [(1956)] 46 Cal.2d 761, 769 [300 P.2d 1].)" (*McNeil, supra,* at pp. 281–282.)

The court rejected the reporters' contention that the references to payment in salary or per diem merely excluded from the Retirement Association reporters who are not compensated by the county, holding that "This interpretation would render section 31554 completely superfluous, for the Legislature has excluded reporters not compensated by the county by defining 'compensation' as remuneration paid from county funds (Gov. Code, § 31460) and by making the rate of contribution to the retirement system in turn dependent on 'earnable compensation.' (Gov. Code, § 31622.) Thus regardless of section 31554, reporters who are not compensated by the county may not contribute at all to the retirement system." (*McNeil v. Board of Retirement, supra,* 51 Cal.2d at p. 282.)

---

[4] As appellants point out, the plaintiffs in *McNeil v. Board of Retirement, supra,* 51 Cal.2d 278, also sought to have the fees they earned for services rendered to other county agencies included. That is not an issue here, but that fact does not diminish the application of *McNeil* to this case.

*McNeil* also considered the effect of sections 31561 and 31451.

■ Section 31561 makes "[a]ny person employed under contract for temporary services requiring professional or highly technical skill" ineligible for membership in the county retirement association. *McNeil* held that transcription (and the other work at issue in the case) required professional skills and was performed under contract. ■ The court determined that the statute precluded the reporters from contributing to the retirement system on the basis of fees for those services. (*McNeil v. Board of Retirement, supra,* 51 Cal.2d at p. 285.) In its discussion of the question, the court drew a distinction between the reporters' official reporting duties, and other duties for which fees were paid, and also noted that "If the services now under discussion had to be performed by the official court reporters personally (*cf.* Gov. Code, § 69945; *Rappaport v. Payne,* 139 Cal.App. 772 [35 P.2d 183]) they might be considered not temporary. It appears, however, that only as a matter of custom and convenience in Stanislaus County do the official reporters usually render these services . . . . " (*Id.* at p. 284.)

Section 31451 sets forth the purpose of the County Retirement Law, which is to "recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a means by which public employees who become incapacitated may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed."

In its discussion of this section, the *McNeil* court wrote that the Legislature "intended retirement benefits to be purely personal compensation for personally rendered services," and that "The fact that the reporters do not ordinarily do their own transcription work, but hire others for this purpose, supports the conclusions we have reached that the basis of the reporters' contributions is limited to salaries and per diems as official superior court reporters and excludes transcription fees and compensation received for service to the various other county agencies . . . . The interpretation urged by plaintiffs would enable them to gain substantial retirement benefits from the work of others contrary to one of the clear purposes of the retirement law." (*McNeil v. Board of Retirement, supra,* 51 Cal.2d at p. 285.)

## Argument

Appellants ask us to reconsider *McNeil*, contending that stare decisis does not apply when the facts are distinguishable, and that the facts are distinguishable here. They contend that their jobs have substantially changed since *McNeil*, or at least that they should be allowed to prove that the facts are different, and that *McNeil* does not "consider the varied responsibilities of today's court reporters."

■ We agree with respondents that under long-established legal doctrines, we may not depart from *McNeil*. *McNeil* held that under section 31554, court reporters' pensions can be based only on salary and per diem, not on transcript fees, and that is the law. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ We also find the Attorney General's 1954 opinion significant. Attorney General opinions, while not binding, are entitled to great weight. (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [270 Cal.Rptr. 796, 793 P.2d 2].) That weight is reinforced here not just by *McNeil*, but by the fact that the Legislature is presumed to be cognizant of the court's and Attorney General's construction of a statute. The Attorney General opinion interpreting section 31554 as excluding transcript fees from "compensation" has been extant for 50 years, and *McNeil* for almost that long, with no legislative reaction. In that period, the Legislature amended section 31461 twice, amended section 31460 three times, and once amended section 31462, without making any change relevant here. Section 31554 remains intact and unamended. All this indicates that the Legislature approves of *McNeil* and the Attorney General's interpretation—and that any change in the law is in the Legislature's province, not ours.

Appellants do not primarily address their arguments to section 31554, but to the court's additional discussion under sections 31561 and 31451. They contend that whether transcription work is "temporary" is a question of fact, cite statutes which make transcript preparation part of their official duty, and argue that there are no facts on demurrer which would indicate that reporters do not prepare their own transcripts.

None of these arguments can persuade us to depart from *McNeil*. We do not see that the case is limited to its facts, or indeed that it depends on its discussions of either section 31561 or section 31451.

Appellants' complaint also alleged that in February 2002, the Retirement Association resolved that "solo daily" fees paid for reporters are pensionable. They cite this fact in their brief. At the county's request, we have taken judicial notice of the resolution. In it, the Board of Retirement determined that " 'solo daily' pay is equal to an additional half-day of the reporter's salary for being the only reporter reporting the proceedings where a daily transcript has been ordered by the judge in certain specified cases, such as death penalty and long cause cases, and which is included as wages on the reporter's W-2 statement," and that "The Board of Retirement has determined the remuneration accounted for as 'solo daily' pay qualifies as 'compensation' and 'compensation earnable.' " A board memorandum, also the subject of the request for judicial notice, explains that "solo daily" payments are governed by section 69952, which limits the kinds of cases in which the court may order a verbatim record, paid for by the county, and also addresses fees to be paid when a court orders a daily transcript: "When the court orders a daily transcript, necessitating the services of two phonographic reporters, the reporting fee for each of the reporters and the transcript fee shall be proper charges against the county treasury, and the daily transcript shall be pursuant to Section 269 of the Code of Civil Procedure. When the daily transcript is prepared by a single reporter, an additional fee for technological services, as set by the court with the agreement of the reporter, may be imposed." (§ 69952, subd. (b).) The memorandum also explains that "solo daily" pay "is additional pay for in-courtroom reporting only (also called 'technological services') not for transcript preparation . . . . As such, it is clearly pay for services rendered during the reporter's workday." The memo also noted "The pay is in the nature of a premium or a bonus for additional responsibilities due to work undertaken in courts where death penalty or long cause cases are tried."

Appellants do not explain why the Retirement Association's decision that payment for these "solo daily" services would allow, let alone compel, us to depart from *McNeil*, and we see none.

The county makes an additional, or alternative, argument that this case is barred by principles of res judicata. It is an issue we need not and do not reach.

## Disposition

The judgment is affirmed. Respondents to recover costs on appeal.

Turner, P. J., and Mosk, J., concurred.

A petition for a rehearing was denied July 6, 2005, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied August 24, 2005.